IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN SHELDON                  :     CIVIL ACTION
                                       :
     v.                             :
                                         :     No. 08-5193
EXPERIAN INFORMATION         :
SOLUTIONS, INC.                 :

## MEMORANDUM

Ludwig, J.                                                 September 28, 2010

     This is a putative class action arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.  Jurisdiction is federal question.  28 U.S.C. § 1331.

     Plaintiffs purport to represent a class of individuals who have been incorrectly classified as "deceased" on credit reports issued by defendant Experian Information Solutions, Inc.  The complaint alleges that the inclusion of this information violates 15 U.S.C. § 1681e(b) because Experian did not implement reasonable procedures to assure the reports' accuracy.  Additionally, it is alleged that the sale of the reports with the incorrect "deceased" notation violates 15 U.S.C. § 1681e(a) because Experian's purpose for selling credit reports on deceased individuals does not come within a statutorily permitted purpose. These violations are alleged to have been both negligent and wilful.  Complaint, Count I.

     Defendant moves for summary judgment.  The motion will be denied as to the allegedly negligent violations and granted as to those alleged to be wilful.

The undisputed facts are as follows.[1]  Experian is a consumer reporting agency.  It collects information from "furnishers" - such as credit card issuers, auto dealers, lenders, and other creditors - and distributes that information to "subscribers."  The latter use the information to make decisions as to whether to extend credit to a particular consumer, to review or collect accounts, and for other purposes permitted under the FCRA.  Declaration of David Browne, Compliance Manager for Experian, ¶ 3.  Experian receives information from about 30,000 furnishers.  Id., ¶ 4.  The information is stored in databases; it is not stored in the form of individual credit reports.  Instead, each piece of credit information is kept separately, along with the individual consumer's identifying information, such as the name, social security number, address.  Id., ¶ 5.  When an inquiry is received, Experian generates a credit report, compiling "trade lines," each of which contains an individual item of credit information concerning the specific consumer.  Id., ¶ 6.  Experian's databases consist of information pertaining to about 200 million consumers.  The databases contain approximately 2.6 billion trade lines.  Experian processes some 50 million updates from its furnishers each day.  Id., ¶¶ 4, 5.  It receives data from about 30,000 furnishers.  Id.

Before accepting information from a particular furnisher, Experian conducts an investigation to determine whether the furnisher is a source of reliable information.  This consists of an inspection of the furnisher's physical plant and an audit of the furnisher's data.

---

[1] The summary judgment record includes the following: the pleadings, responses to interrogatories, documents produced in the course of discovery, affidavits, and deposition transcripts.

After a furnisher is accepted as a reliable source, Experian conducts periodic audits of the furnisher's data in an effort to assure its continuing reliability.  Id., ¶¶ 7, 8.

Before furnishing credit reports, Experian requires all potential subscribers to certify that they will use the information only for permissible uses as set forth in the FCRA.  Id., 9. Experian investigates a subscriber to determine whether its business routinely involves permissible purposes and no impermissible purposes.  Once Experian determines that a subscriber requested credit information only for permissible purposes, it performs no further investigation or auditing of this particular point.  Id.

When a furnisher reports that a consumer is deceased, Experian places a notation on that individual trade line to that effect.[2]  The purpose of the notation is to alert creditors and help prevent identity theft.  Id., 11.  Experian does not require evidence of the death of the consumer.  Deposition of Pat Finneran, Exhibit 6 to plaintiffs' opposition, at 166-67, 181-82. Instead, relying on its previous finding of a furnisher's reliability, it accepts the information

---

[2] Creditors may learn of the death of a consumer at the time it occurs, or they may not.  A consumer's family or estate may or may not notify the creditor.  The consumer may have had a zero balance on a particular account, making communication of the fact of death unnecessary.  A consumer's family or estate may continue paying a particular account long after the death without informing the creditor.  Browne Decl., 18, 19.  For these reasons, not all creditors will necessarily be advised of a consumer's death when it occurs, and, consequently, will not report a consumer as deceased.  Only a small percentage, 6-15%, of furnishers reports a consumer to be deceased. Browne N.T., at 119-20.

Moreover, continued activity on some accounts of a deceased consumer can be explained by the family or an estate using the account, particularly in the case of joint accounts.  As a result, the credit report of a consumer who is actually deceased may reflect activity similar to the report of a consumer mistakenly reported as deceased.  Therefore, examining other entries on the credit report of a consumer shown as deceased will not necessarily reveal that the notation is inaccurate. Browne Decl., 20-24.

without more. Experian's ongoing audit process does include consideration of whether, for example, a particular furnisher has reported consumers deceased at an unusually high rate. Id., ¶¶ 7, 8, 12.

If a consumer disputes a deceased notation on a credit report, Experian (1) contacts the furnisher to verify the information; (2) requests the consumer to submit a notarized letter as to identity that also states that the individual is not deceased. Once it receives such a confirmation, it deletes the deceased notation, notifies the furnisher of the error, and places a flag on the trade line to prevent another inaccurate report. Id., ¶¶ 13-15.

Experian does not independently verify the death of a consumer, but it does collect information pertaining to deceased individuals. Finneran N.T., at 163-64. From the Social Security Administration, Experian compiles a "Death Master File." Deposition of David Browne, Exhibit 7 to plaintiffs' opposition, at 87-90. This information is stored in Experian's FileOne database and identifies the social security number of every individual the U.S. government believes to be deceased. Finneran N.T., at 89, 91, 147. Additionally, Experian obtains notifications of death through an automated process known as "Metro 2." Finneran N.T., 147-49. The provenance of the information is furnishers and subscribers. Id. Experian accepts the "X" notation assigned to consumers reported deceased through this process. Finneran N.T., at 174-75. The "X" code data is also stored in FileOne. Finneran N.T., at 154. The Death Master File and the Metro 2 data are not cross-referenced, though they could be. Finneran N.T., 344; deposition testimony of Joyce Hwang, at 81, 82, 85-86,

Exhibit 8 to plaintiffs' opposition.[3]

Experian sells credit reports as to consumers marked "deceased." It does not, however, promote or prevent the sale of such credit reports, and does not specifically inquire into the report's use other than its initial determination of the subscriber's permissible purpose. Browne N.T., at 108-09. None of Experian's 170 "purpose codes" is designated for sales of reports as to a deceased consumer. Purpose codes, Exhibit 12 to plaintiffs' opposition. Credit reports for consumers marked deceased do not include credit scores. Interrogatory response no. 9, Exhibit 13 to plaintiffs' opposition; deposition testimony of Angela Granger, at 99-100. Without a credit score, consumers generally cannot obtain credit and lenders generally will not extend loans. Granger N.T., at 105-08, 114-18.

In this case, Experian sold credit reports that mistakenly showed that plaintiffs were deceased. Each plaintiff was denied credit because of the error. Excerpts of deposition testimony of named plaintiffs, Exhibit 1 to plaintiffs' opposition. Four of the plaintiffs received adverse action letters from potential lenders.[4] Exhibit 2 to plaintiffs' opposition. In plaintiffs' opinion, Experian did not maintain reasonable procedures to prevent this error

---

[3] In the course of discovery, Experian was requested to perform a cross-reference and was able to do so by automation. The results were that numerous consumers are not on the Death Master File, but are marked as deceased on their credit reports. Exhibit 2 to Hwang N.T. (Consumers with "X" code: 5,355,031. Of those, 443,673 were not included in the Death Master File.)

[4] An "adverse action" notice is a letter that a potential lender must send explaining the reasons why it denied the consumer's credit application or did not offer the best rates and terms. 15 U.S.C. § 1681m

from occurring.  Furthermore, Experian lacked a permissible purpose for selling credit reports on deceased consumers and did not have reasonable procedures in place to prevent the sale of these reports for impermissible purposes.  The complaint requests actual and statutory damages for both negligent and wilful violations of the FCRA.  15 U.S.C. §§ 1681n and 1681o.

I. Violations of 15 U.S.C. § 1681e(b) - The Duty to Report Accurate Information

Under 15 U.S.C. § 1681e(b): "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

In order to state a claim for negligent violation of § 1681e(b), a consumer's allegations must show that "inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996).  The credit reporting agency, however, is not strictly liable for inaccuracies in a credit report.  Id.  Instead, "credit reporting agencies are liable only when inaccuracies are the result of their failure to follow reasonable procedures." Id. at 964. See also Henson v. CSC Credit Serv., 29 F.3d 280, 284 (7th Cir. 1994) ("A credit reporting agency is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy,' but nonetheless reported inaccurate information in the

consumer's credit report.") (citations omitted).

Experian's position is that its procedures - <u>i.e.</u>, investigating its furnishers before accepting data and maintaining ongoing audits to assure continuing accuracy - are reasonable.  Moreover, having investigated its furnishers and found them reliable, it is entitled to rely on their data until it discovers a reason not to do so.  <u>See</u>, <u>e.g.</u>, <u>Sarver v. Experian Info. Solutions</u>, 390 F.3d 969, 972 (7th Cir. 2004) ("In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement [to examine each computer generated credit report for anomalous information] would be reasonable given the enormous volume of information Experian processes daily.")

Plaintiffs: whether Experian's procedures were reasonable is for the fact finder. <u>O'Brien v. Equifax</u>, 382 F.Supp.2d 733, 736-38 (E.D. Pa. 2005) ("[t]ypically, the question of whether a credit reporting agency followed reasonable procedures is reserved for a jury."). In particular, plaintiffs point out that the evidence as to Experian's ability to cross-reference "X" notations against the Death Master File produces a triable issue as to the reasonableness of its current procedures.  The record also evinces that Experian does not check the accuracy of deceased notations it receives from furnishers.  Finneran N.T., at 175-79, 186.  Despite the procedures in place to determine the general reliability of data from a particular furnisher, Experian is unable to ascertain whether the information that a consumer is deceased is correct.  Browne N.T., at 123.  Viewed in the light most favorable to plaintiffs, whether

7

Experian negligently violated § 1681e(b) must be submitted to the factfinder.  For this reason, Experian's motion on this issue must be denied.

Experian also moves for summary judgment on the claim that it wilfully violated § 1681e(b) - on the ground that its procedures to assure the accuracy of its credit reports is not clearly violative of the FCRA, citing  Safeco Ins. Co. of America v. Burr, 551 U.S.47, 70 (2007).  Under Safeco, in order to substantiate a wilful violation under § 1681n, plaintiffs must prove that a consumer reporting agency knowingly violated the FCRA or acted with reckless disregard of the duties imposed by the FCRA.  Id., at 57-60.  "A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id., at 69.  So long as the conduct adopted by the company "could reasonably have found support in the courts," no wilful violation exists and the reporting agency is entitled to summary judgment as a matter of law.  Id., at 70 n.20.

Here, plaintiffs argument is that Experian could have checked each deceased notation received from a furnisher for accuracy; its failure to do so constituted a wilful violation of FCRA.  Experian maintains, however, that this position is not supported by statutory authority or appellate caselaw, as required under Safeco.  Instead, its reliance on its furnishers' data, without more, was permitted under Sarver v. Experian Info. Solutions, 390 F.3d 969, 972 (7th Cir. 2004) (finding as a matter of law that Experian's procedures were

reasonable, and that FCRA did not require "that each computer-generated report be examined for anomalous information . . . [i]n the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist.").  No appellate authority appears to contradict <u>Sarver</u>.  Accordingly, under <u>Safeco</u>, Experian cannot be said to have wilfully violated § 1681e(a).  Summary judgment will be granted in its favor on this claim.

## II. Violations of 15 U.S.C. § 1681e(b) - The Duty to Supply Credit Reports Only For Permissible Purposes[5]

Under 15 U.S.C. § 1681e(a):

> Every consumer reporting agency shall maintain reasonable procedures . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title.  These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.  Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report.  No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

15 U.S.C. § 1681e(a).

Plaintiffs: (1) there is no permissible purpose enumerated in FCRA for the sale of a credit report concerning a deceased person; and (2) Experian does not have a proper

---

[5] Experian: plaintiffs lack standing to assert that the sale of credit reports on deceased consumers violates FCRA because they themselves are not deceased.  This is a mischaracterization of plaintiffs' position - that Experian had no permissible purpose for selling <u>plaintiffs'</u> credit reports when they showed, albeit mistakenly, that plaintiffs were deceased.

procedure to assure that credit reports noting that the consumer is deceased are sold for permissible purposes. Experian's response is that there are permissible purposes for selling reports showing that a particular consumer is deceased and its procedures to determine if its subscribers are purchasing reports for permissible purposes are reasonable.

As to permissible purposes for selling a report on a deceased consumer, Experian points to 15 U.S.C. § 1681b(a)(3)(A) that permits the sale of reports for account collection purposes. A creditor is entitled to attempt to collect a debt form the estate of a deceased consumer, and obtaining a credit report for this purpose is explicitly permissible under FCRA. The same section permits the sale of reports for credit extension purposes. Understandably, a lender is entitled to the information that an applicant has been reported as deceased before it makes a decision as to whether to extend credit. Without access to this information, an important protection against identity theft would be lost. Plaintiffs proffer no authority prohibiting the sale of credit reports in cases in which the consumer is deceased.

Experian asserts that the evidence of record demonstrates that it has implemented reasonable procedures to assure that credit reports are sold only for permissible purposes. The evidence is that, prior to selling credit reports, Experian obtained a blanket certification from potential subscribers. Browne Decl., 9. The certification included, inter alia, a declaration of the permissible purposes for which the credit reports will be used. Id. Experian relied on this certification to assure that credit reports are being sold for permissible purposes.

10

Whether this procedure was reasonable is a decision for factfinder.  See, e.g., Pintos v. Pacific Creditors Ass'n., 565 F.3d 1106, 1114 (9th Cir. 2009) ("[A] subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting the impermissible use.  Blanket certification cannot eliminate all genuine issues of material fact with regard to Experian's liability.").  Accordingly, summary judgment must be denied with respect to the claim of negligent violation of § 1681e(a)

As to plaintiffs' claim that the violation of § 1681e(a) was wilful, Experian again points to Safeco and to the dearth of statutory or appellate authority prohibiting the issuance of a credit report containing a deceased notation - or requiring further proof as to its use unless it appears that the purpose is not permissible.  Instead, Experian relies on caselaw permitting the reporting of information to sources without further investigation, citing Sarver, 390 F.3d at 972 and Henson, 29 F.3d at 285.  Without clear authority to the contrary, Experian's procedures do not amount to a wilful violation of § 1681e(a), and, on this claim, it is entitled to summary judgment.

An order accompanies this memorandum.


BY THE COURT:


/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.


11